## Refund of Taxes and License Fees

ARNOLD, Deputy Attorney General, January 15, 1935.—You have submitted for our advice several questions concerning the powers and duties of the Board of Finance and Revenue with respect to petitions for refunds of taxes and license fees. We shall dispose of them in one opinion, stating the questions and the circumstances out of which they arise as we proceed.

I. On May 13, 1931, a corporation paid capital stock tax for the year 1930, and on May 12, 1933, it filed a petition for refund of part of the money so paid. On December 13, 1933, the Board of Finance and Revenue refused the refund.

The same corporation paid its 1931 capital stock tax, and on May 31, 1933, it filed a petition for refund of a portion of that tax, the grounds of the petition being similar to those on which the petition for refund of 1930 tax was based. On June 13, 1934, the board authorized the refund of 1931 taxes which the corporation sought.

On September 24, 1934, the corporation filed a third petition, asking the board to reconsider its refusal of the refund of 1930 taxes.

Your question is whether the board may entertain the last-mentioned petition and allow a refund, in view of the fact that the petition was filed more than 2 years after the tax was paid. If our answer to that question is in the

affirmative, you inquire during what period petitions of this kind for reconsideration may be presented.

The only limitation on the time within which refund applications must be made to the Board of Finance and Revenue is contained in section 503 of The Fiscal Code of April 9, 1929, P. L. 343, as amended by the Act of June 1, 1931, P. L. 318. It is there provided that all petitions must be filed with the board within 2 years of the payment alleged to have been erroneously made, except in certain circumstances which are not important here.

In the present case, the petition for refund of 1930 taxes was filed within the statutory period. Therefore, the petitioner did all that was required of it in order to bring itself within the limitation fixed by section 503. We see no reason why the board may not, under such circumstances, reconsider any action which it took on a properly filed petition, at any time that it may desire to do so. In our opinion, the fact that a petition for reconsideration comes more than 2 years after the payment was made rather than within the 2-year period is unimportant.

Therefore, we advise you that the Board of Finance and Revenue may, if it deems proper, entertain the petition to reconsider its former action, and upon such reconsideration it may reverse its prior rejection of the claim, and authorize the refund. Of course, any such reconsideration is a matter for the discretion of the board, and it cannot be required to reconsider under any circumstances. We find in the law no limitation on the time within which such reconsideration may be made, but of course any long delay in the application for a reconsideration might well be taken into account by the board in determining whether to entertain such a petition.

II. Your next questions arise out of claims which have been presented for refunds of erroneous payments of liquor license and milk distributors' permit fees. The legislature has made no appropriation for refunds of this nature. Since the questions you ask are applicable to many types of refund applications, we shall discuss them in a general way, endeavoring to provide guides not only for the specific cases now before you but also for others arising under similar conditions.

You ask what course the Board of Finance and Revenue may and should pursue where petitions for refunds are presented when there is no available appropriation from which payments could be made. Specifically you inquire:

(a) Whether the board should consider the claim at all, or should simply refuse it on the ground that no appropriation is available.

(b) Whether, under those circumstances, the board could legally allow a refund or grant a credit.

Section 503 of The Fiscal Code, as amended by the Act of June 1, 1931, P. L. 318, makes it the duty of the Board of Finance and Revenue:

"To hear and determine *any* petition for the refund of taxes, license fees, . . . or other moneys alleged to have been paid to the Commonwealth as the result of an error of law or of fact, or of both law and fact, and, upon the allowance of any such petition, to refund such taxes, license fees, . . . or other moneys, out of any appropriation or appropriations made for the purpose, or to credit the account of the person, . . . entitled to the refund." (Italics ours.)

(a) If the first question above stated refers to a duty to accept, file, and docket a petition, our answer is that it is the clear duty of the board to do so without regard to the availability of funds. The absence of an appropriation cannot affect the duty of the board to "hear and determine *any* petition" in which erroneous payment is alleged. Therefore, the board should not only

receive, file, and docket every petition which falls within its jurisdiction, but also hear and determine it at a proper time.

(*b*) The passage above quoted from The Fiscal Code contemplates three steps in the disposition of a petition for refund. First, the board must hear and consider; then allow or dismiss; and finally, "upon the allowance", make the refund from available appropriations or credit the applicant's account. Absence of an appropriation would definitely interfere only at the last step—the actual making of a refund.

We have no hesitation in saying that your board, if it deems fit to do so, may, without any appropriation, consider a petition for refund and allow it, that is, determine that the claimant is entitled to a refund if money is later made available for the purpose. In fact, a petition should not be dismissed simply because of lack of an appropriation.

However, in many instances, actual determination of petitions in advance of an appropriation would involve a great waste of time and energy. This is particularly true where the refunds sought are of a kind for which the legislature has never previously made any appropriation.

Therefore, the board would be entirely justified, in its discretion, in placing petitions on a suspended calendar until such time as money may be appropriated for the purpose. Thus the board's labors will be conserved, while the claimant is protected against the running of the statutory limitation for filing refund petitions.

Our quotation from section 503 of The Fiscal Code also makes it clear that absence of an appropriation is not intended to affect the allowance of credits on refund applications. Therefore, if credit instead of a cash refund is asked, and if the applicant has an account which can be so credited, the board not only may but should proceed to consider the petition, and upon its allowance authorize the credit, without regard to the availability of an appropriation.

The question which you also ask as to the method to be pursued in effectuating credits is an administrative rather than a legal problem, concerning which we do not feel that we should attempt to give directions. Of course, we shall be glad to advise as to the legal propriety of any plan, if it becomes necessary to change the procedure now employed.

To summarize: The Board of Finance and Revenue may entertain a petition for reconsideration of prior action of the board on an application for refund of taxes or other moneys, even though the application for reconsideration comes more than 2 years after the money was paid to the Commonwealth. There is no limitation on the time within which such reconsideration may be had, but any such action is a matter entirely within the discretion of the board, and delay in presentation of the petition could be taken into consideration by the board in determining whether it would review its prior action.

It is the duty of the Board of Finance and Revenue to receive and docket petitions for refund without regard to the availability of an appropriation for the purpose.

The board may proceed at once to hear and determine the petition, even if no appropriation is available, and may make a determination that the applicant is entitled to a refund if and when money is thereafter provided by the legislature. A petition should not be dismissed simply because no appropriation is available.

If the board prefers, it may place such petitions on a suspended docket and take up consideration of them only after an appropriation has been made.

Refunds claimed may be credited to the accounts of claimants even if no

appropriation is available for cash payments. In cases where a credit is asked for, and where there is such an account as can be so credited, the board ought to consider and determine the petition without awaiting an appropriation.